## F. L. LEWIS v. STATE.

No. A-9874.   Nov. 12, 1941.
(119 P. 2d 91.)

W. J. Crump and Henry O. Boatright, both of Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, F. L. Lewis, was charged in the district court of Muskogee county with the crime of forgery in the second degree, was tried, convicted and sentenced to serve a term of three years' imprisonment in the State Penitentiary; and he has appealed to this court.

There are many assignments of error presented by the defendant in his brief. Assignment of error No. 10, as will be hereinafter discussed, will have to be sustained because of a grave infraction of the rules of procedure which appears to have prejudicially affected the substantial rights of the defendant.

In view of the necessity of a retrial of this case, we shall make a short statement concerning the various other propositions raised by counsel for defendant in their brief, which appear to this court of sufficient importance to merit a statement; otherwise, the same questions might be raised on a retrial of the case.

It is first contended that the court erred in overruling the demurrer of the defendant to the information for the reason that the information failed to allege that Swift & Co., to whom it is alleged the forged instrument was delivered by the defendant, was a corporation.

We have recently held in the case of Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144, that it is not necessary to allege the name of the person to whom the forged instrument is uttered where a copy of the forged instrument, with endorsements thereon, is copied in full in

the indictment, and the other essential elements of the offense are fully stated in the indictment.

In Reniff v. State, 53 Okla. Cr. 448, 13 P. 2d 592, this court held that, where the information charged the forged instrument was negotiated with the "Lawton Tire Company," and the proof showed that the check was delivered to the "Lawton Tire Shop," the variance was immaterial.

We find the court correctly overruled the demurrer of the defendant to the information filed herein.

It is next contended that the evidence is insufficient to sustain the verdict.

We find, after a careful examination of the record, that the evidence introduced by the state is amply sufficient to support the conviction.

It is next contended that the court erred in giving instruction No. 6, which was the instruction on circumstantial evidence.

We have read this instruction; and, while we do not think that this instruction is susceptible of the construction which the defendant has placed upon it, in a retrial of this case the court should eliminate that part of the instruction which reads as follows: "* * * that is to say: no person has taken the witness stand and testified that he saw the defendant write the name of J. J. Hogans on said bill of exchange in question in this case."

The counsel for defendant further lay great stress upon the letter "a" in front of circumstantial evidence, in the latter part of the instruction. We feel that this is a typographical error and inadvertently placed in said instruction; and, of course, the same should be eliminated.

The defendant was not charged with forging J. J. Hogans' name on the bill of exchange, but he was charged

with uttering the instrument after the same had been forged, knowing that the same was forged. For that reason, the first part of the instruction above quoted should be eliminated.

Assignment of error No. 10 is as follows:

"The court erred in visiting the jury while said jury was in its room considering of its verdict in this case, and in conversing with at least one member of the jury, all of this being done without the knowledge or consent of the defendant or either of defendant's attorneys, as shown by the record in this case."

Assignment of error No. 11 is as follows:

"The court erred in permitting the jury to separate at the noon hour after the case had been finally submitted to said jury, and after said jury had been deliberating and considering of its verdict for some time. Said jury being permitted to separate by the court without the consent of the defendant or either of defendant's attorneys."

These two assignments were discussed together by counsel for defendant in their brief; and, because the proof in connection with these two assignments was presented at the same time, we shall likewise discuss the two assignments together.

The record discloses the following:

"(Thereafter the hour of twelve o'clock noon, having arrived the jury is returned into Court in charge of their sworn bailiff, and the following proceedings were had and done, to wit:) The Court: Gentlemen of the Jury, have you agreed upon a verdict? A Juror: No, sir, we have not. The Court: Now, don't tell me how you stand but the numerical ratio. A Juror: Ten to two. The Court: Do you think there is a possibility of agreeing upon a verdict? A Juror: I don't know, there might be. The Court: Well, I am going to permit you to go and get your lunch. In the meantime don't permit anybody to talk to you about the case or in your presence or hearing. If anyone approaches you and attempts to talk

about the case tell them you are on the jury and you can't talk to them and if they insist in it get their names and give them to the court and the court will take care of that. The court does not want any irregularity in this trial. So you may go now.

"(Whereupon the jury are permitted to separate and get their lunch, and thereafter retire to their juryroom to consider further of their verdict.)

"(Whereupon court took a recess until one o'clock p.m. at which time court reconvened in regular session, the plaintiff, State of Oklahoma, appearing by its counsel as heretofore, and the defendant present in his own proper person and by his attorney of record, whereupon the following proceedings were had, to wit:)

"Mr. Crump: Comes now the defendant and states and shows to the court that after the jury was permitted to separate during the noon hour and after the case had been finally submitted to the jury counsel for the defendant received information to the effect that the judge of this court who presided at all times during the trial of this case went to the jury room at some time before it was discharged for the noon recess and talked to at least some members of the jury, and that this was done without the knowledge or consent of the defendant or either one of his attorneys. We have no information as to what was said by the judge to the jurors, except the judge himself has stated to me, W. J. Crump, what he did state to the jury, and the defendant therefore asks now that the case be withdrawn from the jury and that the jury be discharged and a mistrial ordered.

"Now, may the record show that you did go to the jury room and talk to some of the jurors in the absence of counsel?

"The Court: The record may show in response to the motion of counsel for the defendant, I may say, that I, O. H. P. Brewer, judge of the district court, who presided at all times during the trial of the case now in question, advanced to the jury room at the noon hour, 12 o'clock and knocked on the door and one man came

to the door after the door was opened by the bailiff and I inquired if the jury had reached an agreement, and was informed that they had not. I told them that the hour of noon had arrived but I would retire to my chambers and leave the matter with them a few minutes and if they could not agree then I suggested they should come down and report to the court and we would recess for the noon hour. About the hour of twelve-ten or-fifteen the jury did report to the courtroom and made their report and they were recessed until the hour of one p.m. The motion of counsel for the defendant is heard and denied."

After the jury had rendered their verdict finding the defendant guilty, the defendant, through his counsel, filed a motion for a new trial, setting up, among other things, these two assignments of error.

The county attorney, acting in accordance with the holdings of this court in Sealy v. State, 59 Okla. Cr. 104, 56 P. 2d 903, and other cases, in which we have held where the jury is permitted to separate after final submission of the case to them, that the defendant is entitled to the presumption that such separation is prejudicial to him, and the burden is on the state to make a showing that such action did not, in fact, prejudice the defendant; accordingly, the county attorney had each of the jurors sworn and questioned separately concerning their activities during the time they were separated. When the first juror was called as a witness and examined by the county attorney, counsel for the defense, after questioning the juror, Breedlove, concerning his actions during the noon hour while the jurors were permitted to separate, further sought to question the juror concerning the conversation which was had with the presiding judge, when the judge came to the jury room and spoke to the jury, in the absence of the defendant and his counsel, to which question the court sustained an objection by the

county attorney that such question was improper cross-examination.

The record then discloses that the following occurred:

"Mr. Crump: Well, I will offer to make him my own witness on that proposition, if your Honor thinks it is improper cross-examination. You sustain the objection? The Court: Yes. Mr. Crump: We except. I now ask to make the witness our own witness and ask him what happened when Judge Brewer went to the jury room. Mr. Garrett: To which the state excepts for the reason that—objects for the reason that the matters he is attempting to go into with this witness are set out in detail and in his argument on his motion for new trial and the jury was not called in for that particular matter, only as to whether the rights of the defendant were prejudiced by being allowed to separate during the noon hour. The Court: I think so, Judge Crump. I will have to sustain it. Mr. Crump: Well, give us an exception, please. Now, if your Honor please, I don't want to be discourteous or anything. May the record show from each juror —each witness who was a member of the jury, that the record made here is what occurred when your Honor went to the jury room, is made as to such witness? The Court: Yes."

As to assignment No. 11, each of the jurors testified at length that no one talked to them about the case during the recess when they were allowed to separate, and that they did not hear the case discussed by any one, and that nothing happened which in any way influenced them in arriving at a verdict.

We think such a showing was sufficient on the part of the state to overcome the presumption that the defendant was prejudiced by reason of such action.

As to assignment No. 10, the Attorney General confesses in his brief that the court erred in going to the jury room, in the absence of the defendant and his counsel, and discussing the case with the jury, and further

erred in refusing to allow defendant's counsel to question the jurors as to what the judge said to them when he came to the jury room; but it is contended that such action, when considered together with the record in this case, shows that the defendant was not prejudiced by reason of anything that was said or done, and that said error, accordingly, is harmless.

From Ridley v. State, 5 Okla. Cr. 522, 115 P. 628, 630, we quote the following:

"The question presented is whether such misconduct is sufficient to require the court to set the verdict aside and grant a new trial. It is of the utmost importance that jurors and court officials should be held to a strict observance of the provisions of law prescribing their procedure and duties, and their conduct should be such that no possible suspicion can attach to them of having acted in a manner prejudicial to the accused, or in his favor. If there was a disagreement between them, or if they were doubtful as to how they should proceed, they should have required the officer in charge to conduct them into court, and the necessary information would be given by the court in the presence of the parties. It will be presumed, in the absence of anything to the contrary, that the rights of the defendant were prejudiced by the action of the jury and clerk of the court in disregarding and failing to observe the requirements of the statute. Courts cannot be too strict in compelling a rigid and vigilant observance of the provisions of the statutes designed to preserve inviolate the right of trial by jury and the purity of jury trials. We deem it unnecessary to consider the other assignments."

See, also, in this connection the following Oklahoma cases: Watson v. State, 7 Okla. Cr. 508, 124 P. 329; Selstrom v. State, 7 Okla. Cr. 345, 123 P. 557; Thomas v. State, 13 Okla. Cr. 414, 164 P. 995; Henderson v. State, 18 Okla. Cr. 611, 197 P. 720; Montgomery v. State, 19 Okla. Cr. 224, 199 P. 222; Walter v. State, 29

Okla. Cr. 221, 233 P. 240; Bennett v. State, 42 Okla. Cr. 264, 275 P. 390; Grable v. State, 60 Okla. Cr. 339, 44 P. 2d 152; Raab v. State, 62 Okla. Cr. 361, 71 P. 2d 773, 778.

In the recent case of Raab v. State, supra, it is stated:

"Not only do the Oklahoma cases uphold this doctrine, but the generally accepted view is that it is reversible error for the trial judge in a criminal case to communicate with the jury or any member thereof, except in open court and in the presence of the defendant and his counsel; the basis of such ruling being that the accused shall have the right of a public trial and the right to be present during all stages thereof. There are some decisions which hold that it is necessary to show prejudicial error, but many of these cases are civil cases, and many of them are based upon peculiar statutes different from what we have in Oklahoma. The oldest and one relied upon by many authorities in establishing this principal was the case of Sargent v. Roberts, 1 Pick. (Mass.) 337, 11 Am. Dec. 185. The court says:

"'And we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury, after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course: "He is to suffer no person to speak to them, nor to speak to them himself unless to ask them whether they are agreed;" and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned, the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper.'"

Oklahoma is not as strict as many states in regard to this matter; but we are committed to the doctrine that,

when the trial judge communicates with the jury, outside of the courtroom, in the absence of the defendant or his counsel, such conduct is presumed to be prejudicial to the defendant, and the burden is upon the state to show that the defendant was not prejudiced by reason of such misconduct. Here, we find the state not even attempting to uphold the burden in connection with this assignment. They did subpoena the jurors for the purpose of testifying in connection with the question as to whether the defendant was prejudiced by reason of the separation of the jury after the final submission of the case. But when defendant, through his counsel, seeks to question the jurors concerning the conversation had with the trial judge, the county attorney objected, and the trial court very promptly sustained his objection.

Since the conduct of the trial judge was being questioned, he should have been anxious to have a full, free, and frank statement from each of the jurors as to what occurred when he came to the jury room and communicated with them, so as to conclusively show that the defendant could not have been prejudiced.

The trial judge is an honorable member of the judiciary; and with our past knowledge of his fairness to all parties in the trial of criminal cases, we are quite certain that the court did not intend to say or to do anything which might prejudice the defendant. As was said in the case of Watson v. State, supra [7 Okla. Cr. 508, 124 P. 330]:

"* * * the wisest and best judge, when acting on the spur of the moment during a trial, sometimes makes a mistake."

We think the language used by the court in the case of State v. Wroth, 15 Wash. 621, 47 P. 106, 107, is applicable to the facts in the instant case. It is there stated:

"It is contended by the appellant's counsel that this constituted such misconduct on the part of the trial judge as requires a reversal, and we think the contention must be sustained. In the discharge of his official duty, the place for the judge is on the bench. As to him, the law has closed the portals of the jury room, and he may not enter. The appellant was not obliged to follow the judge to the jury room in order to protect his legal rights, or to see that the jury was not influenced by the presence of the judge; and the state cannot be permitted to show what occurred between the judge and the jury at a place where the judge had no right to be, and in regard to which no official record could be made.

"But learned counsel for the state insist that the judge said nothing to the jury, and hence his conduct could not have been prejudicial to the defendant. But the law does not subject parties litigant to the disadvantage of being required to accept the statement of even the judge as to what occurs between himself and the jury at a place where the judge has no right to be, and where litigants cannot be required to attend. It is the lawful right of a party to have his cause tried in open court, with opportunity to be present and heard in respect to everything transacted. It is his right to be present and attended by counsel whenever it is found necessary or desirable for the court to communicate with the jury, and he is not required to depend upon the memory or sense of fairness of the judge as to what occurs between the judge and jury at any time or place when he has no lawful right to be present. His right in this respect goes to the very substance of trial by jury. Aside from the rights of the parties, public policy will not sanction any departure from the rule which requires that all such communications shall be public, and in the presence of the parties or their counsel."

In Raab v. State, supra, Judge Barefoot reviewed the authorities at length in connection with this proposition, and reference is made to that case for a very able and extended discussion of this question.

We cannot agree that this error is harmless error.

For the reasons hereinabove stated, the judgment of the district court of Muskogee county is reversed with instructions to grant defendant a new trial.

BAREFOOT, P. J., and DOYLE, J., concur.